# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47812

LINDA KAYE BLACK,

   Plaintiff-Appellant,

v.

DJO GLOBAL, INC., DJO GLOBAL INC.,
dba EMPI; and BLACKSTONE CAPITAL
PARTNERS, V.L.P.,

   Defendant-Respondents.

Boise, February 2021 Term

Opinion Filed: June 9, 2021

Melanie Gagnepain, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Joel E. Tingey, District Judge.

The decision of the district court is affirmed.

Browning Law, Idaho Falls, for Appellant. Allen Browning argued.

Duke Evett, PLLC, Boise, for Respondents. Joshua S. Evett argued.

_____

BRODY, Justice.

This appeal arises out of a summary judgment ruling in a product liability case. Linda Black sustained second-degree burns on her back while undergoing electrotherapeutic treatment at Superior Physical Therapy ("SPT"). Black's treatment was performed by Bart McDonald, a licensed physical therapist and the sole owner of SPT.

Black brought a product liability claim against the manufacturer and seller of the self-adhesive carbon electrode pads used during her treatment. The manufacturer moved for summary judgment on the grounds that Black was unable to prove that the electrode pads were defective or that the injuries Black sustained were proximately caused by its negligence. The district court ruled that: (1) McDonald's conclusory statements that the electrode pads were defective were inadmissible because he was not a qualified expert; (2) the doctrine of res ipsa loquitur did not

apply to Black's case; and (3) Black's prima facie case failed because there was evidence of abnormal use of the electrode pads and other reasonable secondary causes that could have contributed to Black's injury. The district court granted summary judgment in favor of the manufacturer. We affirm the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Black was 68 years old at the time she began physical therapy at SPT. Black had been referred to McDonald for treatment to improve her overall quality of life and help combat numerous underlying health conditions. McDonald recommended that Black undergo interferential current therapy ("IFC"), which electrically stimulates the nerves and muscles to decrease inflammation, increase blood flow, and improve tissue healing. McDonald performed IFC treatments using a Rich-Mar Muscle Stimulator with carbon electrode pads. The electrode pads were manufactured and sold by DJO Global, Inc. ("DJO").

In the week leading up to her injury, Black completed three rounds of IFC treatment without any complications. Before McDonald began Black's fourth IFC treatment, the stimulator was calibrated to its appropriate manufacturer setting, which included transmitting electrical signals at a frequency of 100 pulses per second; additionally, the stimulator was set to the maximum current of 50mA. After ensuring that Black's skin was "clean and ready for treatment," McDonald applied the electrode pads directly to Black's bare skin. The same set of electrode pads were used on Black during her earlier IFC treatments.

Near the end of Black's treatment, McDonald noticed a white spot on Black's lower back that appeared to be an electrical burn. Unaware of the discoloration on her skin, Black confirmed that she had no history of preexisting skin conditions and appeared to be unconcerned with the spot on her skin; thus, McDonald continued with the remainder of her scheduled non-IFC therapy for that day. Two hours later, however, Black returned to SPT with skin that was red and inflamed. Concerned, McDonald recommended that Black see a doctor.

After a medical examination, Black learned she had suffered second-degree burns on her lower back. Prior to any examination of the electrode pads—aside from McDonald's initial post-burn visual inspection—the electrode pads were discarded by a member of McDonald's staff.

### B. Procedural History

Black filed suit against DJO and Blackstone Capital Partners, V.L.P., alleging that one of

the electrode pads used on Black contained a defect when it left DJO's control and was the direct and proximate cause of her injuries. Both parties subsequently sought to dismiss Blackstone Capital Partners, and the district court granted the stipulated dismissal without prejudice.

After a period of discovery and the filing of expert witness disclosures, DJO moved for summary judgment, arguing Black's claim should be dismissed because she had failed to provide "expert proof." More specifically, DJO asserted that Black could not: (1) provide foundation for McDonald's opinion that the electrode pads used on Black were defective; and (2) demonstrate the existence of a defect or causation without a qualified expert witness. Alternatively, DJO argued that even if Black was not required to present an expert opinion identifying a specific defect in the electrode pads, Black's circumstantial evidence of a defect in the electrode pads still failed because there were other reasonable alternative causes for Black's injuries, including McDonald's failure to adhere to the directions and warnings in the operating manual for the stimulator.

Black responded with a memorandum in opposition to DJO's motion and submitted an affidavit from McDonald. The affidavit outlined: (1) his experience with electric stimulation therapy over a 19-year period; (2) his explanation that only three other patients had ever suffered burns similar to Black, and that each of those patients had used electrode pads from the same lot as the pads at issue here; and (3) his opinion that there was no other reasonable explanation for Black's burns other than defective electrode pads.

The district court issued a memorandum decision granting summary judgment in favor of DJO and dismissing Black's complaint with prejudice. The district court concluded that: (1) McDonald's conclusory statements that the electrode pads were defective were inadmissible because he was not qualified to testify about latent defects in electrode pads; (2) there was evidence of abnormal use and reasonable secondary causes; and (3) res ipsa loquitur did not apply to Black's case. Black filed a motion for reconsideration, which was denied. Black timely appealed to this Court.

## II.    STANDARD OF REVIEW

In reviewing a district court's ruling to grant a motion for summary judgment, this Court employs the same standard used by the district court originally ruling on the motion. *Eldridge v. West*, 166 Idaho 303, ___, 458 P.3d 172, 177 (2020).

The burden rests upon the party seeking summary judgment to establish the absence of a

genuine issue of material fact. *Packer v. Riverbend*, 167 Idaho 205, ___, 468 P.3d 1283, 1287 (2020). "If the moving party has demonstrated the absence of a question of material fact, the burden shifts to the nonmoving party to demonstrate an issue of material fact that will preclude summary judgment." *Eagle Springs Homeowners Assoc., Inc. v. Rodina*, 165 Idaho 862, 868, 454 P.3d 504, 510 (2019) (quoting *Johnson v. Wal-Mart Stores, Inc.*, 164 Idaho 53, 56, 423 P.3d 1005, 1008 (2018)).

In order to bar summary judgment, however, the nonmoving party is required to present more than a scintilla of evidence. *Zimmerman v. Volkswagen of Am., Inc.*, 128 Idaho 851, 854, 920 P.2d 67, 71 (1996). In other words, the nonmoving party is compelled to "respond to the summary judgment motion with specific facts showing there is a genuine issue for trial." *Samuel v. Hepworth, Nungester & Lezamiz*, 134 Idaho 84, 87, 996 P.2d 303, 306 (2000) (quoting *Tuttle v. Sudenga Indus., Inc.*, 125 Idaho 145, 150, 868 P.2d 473, 478 (1994)). In effect, "[a] party may not rely on his pleadings nor merely assert that there are some facts which might or will support his legal theory, but rather he must establish the existence of those facts by deposition, affidavit, or otherwise." I.R.C.P. 56(a).

### III.    ANALYSIS

#### A.  We affirm the district court's ruling that McDonald's testimony was inadmissible.

Before turning to the district court's ruling on summary judgment, it is necessary to first address Black's contention that the district court erred when it ruled that statements made by McDonald in an affidavit were inadmissible. Black's claim of error misapprehends the district court's ruling.

Black attached McDonald's affidavit to a memorandum in opposition to DJO's motion for summary judgment. In her memorandum, Black argued McDonald was an expert witness who satisfied the criteria of Idaho Rule of Evidence 702. Black asserted that McDonald should be allowed to testify that the electrode pads he used on Black were more likely than not defective and the sole cause of her burns because in his entire 19-year practice he had observed only three previous incidents of burns—all of which originated from electrode pads in the same lot at issue here.

The district court rejected Black's argument, ruling there was insufficient foundation in the record to establish that McDonald possessed the requisite expertise in the design or manufacturing of electrode pads. The district court reasoned that although McDonald was

qualified to testify about "his actions and observations" and "his prior experience," McDonald was not qualified to conclude that the electrode pads were defective absent one possible exception: "It should be noted that McDonald is likely qualified to visually inspect an electrode to see whether there is a loose wire or some other abnormality." The final sentence of the district court's decision read: "As such, the conclusion by McDonald that the electrodes were defective is inadmissible and will not be considered by the Court."

On appeal, Black appears to have abandoned her position that McDonald qualified as an expert witness. Instead, Black argues that McDonald's affidavit, in accordance with this Court's decision in *Farmer v. Int'l Harvester Co.*, 97 Idaho 742, 552 P.3d 1306 (1976), should have been considered by the district court as circumstantial evidence of a defect:

> [McDonald's] testimony that he was the user and operator of the Rich-Mar Unit and the electrode pads, had used them hundred of thousands of times before for the same procedure without incident, and that no other cause could be identified as causing Plaintiff's burns other than defective pads, satisfies the analysis from *Farmer*. McDonald was qualified to make those statements. The District Court erred and abused its discretion when finding that he was not able to make those statements and that ruling must be reversed.

Black's argument is confounding. The district court expressly held that McDonald could testify about "his actions and observations" and "his prior experience." The only part of McDonald's affidavit that the district court ruled inadmissible was his conclusory statements that the electrode pads were "defective." Moreover, Black's failure to proffer an expert to testify that the pads were "defective" is not necessarily fatal to Black's claim. As explained below, this Court has long held that an expert witness is not necessarily required in a product defect case. *See Massey v. Conagra Foods, Inc.*, 156 Idaho 476, 481, 328 P.3d 456, 461 (2014); *Fouche v. Chrysler Motors Corp.*, 107 Idaho 701, 704, 692 P.2d 345, 348 (1984). Black's assertion of error is premised on a ruling the district court did not make, and she makes no challenge on appeal to the legal basis upon which the district court actually ruled. Therefore, we affirm the evidentiary ruling of the district court.

## B. We affirm the district court's decision granting DJO's motion for summary judgment.

The district court held that Black failed to provide admissible evidence showing there was a defect in the electrode pads, and was unable to refute DJO's defense that "there [wa]s evidence of not only abnormal use of the electrode pads but also a reasonable possibility of a

5

secondary cause." The district court relied heavily on this Court's opinion in *Farmer* to reach its conclusions. *Farmer v. Int'l Harvester Co.*, 97 Idaho 742, 552 P.3d 1306 (1976). Black contends that the district court erred in granting DJO's motion for summary judgment. We disagree and affirm the district court's decision.

A plaintiff in a product liability case has the burden of proving: (1) he was injured by the product; (2) the injury was the result of a defective or unsafe product; and (3) the defect existed when the product left the control of the manufacturer. *Farmer*, 97 Idaho at 746–47, 553 P.2d at 1310–11 (citing *Henderson v. Cominco Am., Inc.*, 95 Idaho 690, 696, 518 P.2d 873, 879 (1973)). In *Farmer*, this Court explained that the term "defect" is not susceptible to a single definition and must be considered on a case-by-case basis. *Id.* at 747, 553 P.2d at 1311. This Court quoted Prosser's view that "the prevailing interpretation of 'defective' is that the product does not meet the reasonable expectations of the ordinary consumer as to its safety." *Id.* (quoting Prosser, Torts § 99 (4th ed. 1971)).

This Court has held that there are two pathways to proving a product is defective: (1) direct evidence of an identifiable, specific defect; or (2) evidence of a malfunction of the product and the absence of evidence of abnormal use and the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant. *Id.* at 747, 553 P.2d at 1311 (holding that although "[d]irect evidence of [an] identifiable defect in a product is [the] strongest evidence of its defective condition," plaintiffs may prove their prima facie case by circumstantial evidence, and holding that "a plaintiff need not prove a specific defect to carry his burden of proof."). This Court has explained that proof of a product "malfunction" is circumstantial evidence of a product "defect" since a product will not ordinarily malfunction within the reasonable contemplation of the consumer in the absence of a defect. *Id.* at 748, 553 P.2d at 1312. The circumstantial evidence doctrine is widely accepted and, depending on the jurisdiction, goes by many names. *See* David. G. Owen, *Manufacturing Defects*, 53 S.C. L. REV. 851, 873 n.123 (2002) (stating that the circumstantial evidence doctrine is known as the "indeterminate defect theory," the "general defect theory," the "malfunction theory," and even as "a principle of circumstantial evidence."). We dub the circumstantial evidence doctrine as the "malfunction theory" since that phrase is consistent with the language originally used in *Farmer*.

Since *Farmer* was decided, this Court has declined to require expert testimony in malfunction theory cases, stating: "though it is no doubt true that a plaintiff may bolster his or

6

her case considerably through the use of expert testimony, we nevertheless decline to require such expert testimony for the establishment of a plaintiff's prima facie case." *Massey v. Conagra Foods, Inc.*, 156 Idaho 476, 481, 328 P.3d 456, 461 (2014) (brackets omitted) (quoting *Fouche v. Chrysler Motors Corp.*, 107 Idaho 701, 704, 692 P.2d 345, 348 (1984)). Thus, a prima facie product defect claim may be established solely based upon the "testimony of the user or operator of the product as to the circumstances of the event." *Id.* at 480–81, 328 P.3d at 460–61 (brackets omitted) (quoting *Farmer*, 97 Idaho at 748, 553 P.2d at 1312).

Turning to this case, Black contends that summary judgment should not have been granted because the record contains sufficient evidence to create genuine issues of material fact that must be resolved by a jury. Black points to McDonald's affidavit, which essentially states that he has been performing electric stimulation therapy for 19 years (close to 300,000 administrations) and has never had a patient sustain a burn until he used the electrode pads at issue in this case. More specifically, McDonald states that he had three other patients suffer burns while using electrode pads from the same lot at issue, and that he discontinued using them. According to McDonald, someone in his office discarded the pads, so they are no longer available for inspection. Thus, Black's claim is constrained to the malfunction theory.

Setting aside some obvious foundational issues with McDonald's cursory affidavit, Black cannot make out a prima facie case under the malfunction theory. The first element of the malfunction theory requires a plaintiff to demonstrate that the product "malfunctioned." This Court explained in *Farmer* that the product at issue must be of a type which permits a jury to infer that an injury would not have occurred had there not been a defect attributable to the manufacturer:

> The product itself must be of a type permitting the jury, after weighing all the evidence * * * to infer that in the normal course of human experience an injury would not have occurred at this point in the product's life span had there not been a defect attributable to the manufacturer.

*Farmer*, 97 Idaho at 749, 553 P.2d at 1313 (quoting *Scanlon v. Gen. Motors Corp.*, 326 A.2d 673, 679 (N.J. 1974)). The electrode pads in this case are not that type of product.

The electrode pads at issue are used in conjunction with electric stimulation devices. The Rich-Mar stimulator used on Black had an operating manual which specifically noted that "[s]kin irritation and burns beneath the electrodes have been reported with the use of muscle stimulators." Black does not dispute that burns are a known side effect associated with electric

7

stimulation therapy and carbon electrode pads. Instead, she argues on appeal that the operating manual should not be considered as evidence. She raised no objections to the admissibility of the operating manual before the district court; therefore, we will not consider her argument for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1990).

While the malfunction theory is a common sense rule that enables plaintiffs to bring a claim for a product defect where the product is no longer available or a specific defect cannot be identified, application of the doctrine in this case would stretch the theory to its logical breaking point. Black suffered an injury that is the precise type of injury that is known to result from IFC therapy. This fact precludes a jury from inferring that "an injury would not have occurred . . . had there not been a defect attributable to the manufacturer." *Farmer*, 97 Idaho at 749, 553 P.2d at 1313 (quoting *Scanlon*, 326 A.2d at 679). Because Black cannot carry her burden of demonstrating that the electrode pads malfunctioned, we hold that the district court properly granted summary judgment in favor of DJO, and we need not address the issues of abnormal use and reasonable secondary causes.

**C. The doctrine of res ipsa loquitur is not applicable.**

Black contends that the district court erred when it ruled that the doctrine of res ipsa loquitur was not applicable to this case. Black has not convinced us, however, that the doctrine of res ipsa loquitur is applicable to a malfunction theory case. As explained above, the analytical framework that this Court employs to evaluate a malfunction theory case is well established. *See, e.g., Farmer v. Int'l Harvester Co.,* 97 Idaho 742, 747, 553 P.2d 1306, 1311 (1976) ("A prima facie case may be proved by direct or circumstantial evidence of a malfunction of the product and the absence of evidence of abnormal use and the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant."). This Court has not relied on the doctrine of res ipsa loquitur when deciding malfunction theory cases, and we are not persuaded that it is necessary to do so today.

Moreover, even if this Court did apply the doctrine of res ipsa loquitur to this case, Black's argument would fail. "The doctrine of res ipsa loquitur is applicable when two elements co-exist: (1) the agency or instrumentality causing the injury was under the exclusive control and management of the defendant; and (2) the circumstances were such that common knowledge and experience would justify the inference that the accident would not have ordinarily happened in the absence of negligence." *Brizendine v. Nampa Meridian Irrigation Dist.*, 97 Idaho 580, 583,

548 P.2d 80, 83 (1976). Because the electrode pads were not under the exclusive control and management of DJO, Black cannot satisfy the first element of the doctrine of res ipsa loquitur. Nor can she satisfy the second element, because, as we explained above, an electrode pad is not the type of product that would permit a jury to infer that her injury would not have occurred had there not been a defect attributable to the manufacturer.

We affirm the district court's ruling that the doctrine of res ipsa loquitur is not applicable to the case at bar.

### D. Black waived any implied warranty claim.

In the section of her opening brief dealing with the doctrine of res ipsa loquitur, Black argues that "the electrotherapy pads were impliedly warranteed [sic] to perform properly for ten (10) uses before requiring replacement. The pads failed after only three (3) applications, creating a breach of their implied warranty to work for ten (10) applications." While we question whether this is an accurate characterization of any warranty that was made by DJO, this is the first time a breach of warranty claim has been raised. We will not consider issues raised for the first time on appeal. *Watkins Company, LLC v. Estate of Storms*, 161 Idaho 683, 686, 390 P.3d 409, 412 (2017).

## IV. CONCLUSION

In light of the foregoing, we affirm the district court's decision granting DJO's motion for summary judgment.

Chief Justice BEVAN, and Justices BURDICK, STEGNER, and MOELLER CONCUR.