# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48978

|  |  |  |
|---|---|---|
| PAMELA K. VOUK, VONDEL CHAPMAN, JANA L. REED, DEWEY L. CHAPMAN, BRAD L. CHAPMAN, and CHARLES W. CHAPMAN, as individuals and beneficiaries of the Chapman Family Multiple Power Liquidity Trust and PAMELA K. VOUK AND VONDEL CHAPMAN, as Trustees of the Chapman Family Multiple Power Liquidity Trust, | ) ) ) ) ) ) ) ) ) ) ) | Boise, August 2022 Term |
|  | ) ) | Opinion Filed: December 7, 2022 |
|    Plaintiffs-Respondents, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) |  |
| WADE CHAPMAN, as an individual, and as Trustee of the Chapman Family Multiple Power Liquidity Trust, | ) ) ) ) ) |  |
|    Defendant-Appellant. | ) ) |  |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Dane H. Watkins, District Judge.

The judgment of the district court is <u>affirmed in part</u> and the case <u>remanded</u> with instructions to enter an amended judgment consistent with this opinion.

Murray, Ziel & Johnston, Idaho Falls, for Appellant. Paul Ziel argued.

Parson Behle & Latimer, Idaho Falls, for Respondents. Slade Sokol argued.

_____

BRODY, Justice

    This case involves a claim for breach of fiduciary duty arising out of a trustee's decision to retain the death benefit of a life insurance policy owned by a trust. Wade Chapman ("Wade") and his six siblings ("Siblings") are the children of Wilford ("Bill") Chapman. Bill had a life insurance policy for $7,000,000 that named the Chapman Family Multiple Power Liquidity Trust

1

("Trust") as its owner. Wade, along with Siblings, were named as the Trust's beneficiaries. Wade was also named a trustee. After Bill passed away, Wade learned that he was listed as the sole beneficiary of the life insurance policy and retained the entirety of the death benefit for himself. Siblings sued Wade for breach of fiduciary duty, among other causes of action, arguing that the policy was a Trust asset, and its proceeds should have been distributed equally among them. The district court agreed and granted summary judgment in favor of Siblings. It also awarded prejudgment interest against Wade under Idaho Code section 28-22-104 and attorney fees under Idaho Code section 15-8-201, a provision of the Trust and Estate Dispute Resolution Act ("TEDRA"). For the reasons set out below, we affirm the district court's grant of summary judgment to Siblings, affirm in part and reverse in part the award of prejudgment interest, and reverse the grant of attorney fees to Siblings under TEDRA. We remand this matter to the district court with instructions to enter an amended judgment consistent with this opinion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Bill and Margaret Chapman (the Chapmans) established the Trust in 1993 as an irrevocable trust. The Chapmans named their seven children as beneficiaries of the Trust: Pamela Kay Vouk, VonDel Chapman, Jana Lee Reed, Wade Chapman, Dewey Lynn Chapman, Brad Lee Chapman, and Charles W. Chapman. Wade, Pamela and VonDel were also named its trustees. The Trust held two assets at the time it was settled: a Phoenix Home Life policy insuring Bill's life for roughly $2,500,000, and a second Phoenix Home Life policy insuring the life of another person (who is not directly involved in this appeal) for roughly $1,000,000.

In 2004, the Phoenix Home Life policy insuring Bill's life was replaced with a Jackson National Life Insurance Company policy (the "Jackson Policy") as part of a tax free 1035 like kind exchange. A 1035 exchange allows one life insurance policy to be exchanged for another without having to pay certain federal taxes. *See* 26 U.S.C. § 1035. The Jackson Policy provided a death benefit of $7,000,000. The policy listed the Trust as its owner and Wade as its sole beneficiary. At some point before August 2007, the Trust also acquired shares in Idaho Supreme Potatoes, Inc.

In August 2007, the trustees and beneficiaries entered into an Agreement for Distribution of Assets and Assignment of Shares ("Distribution Agreement"). The Distribution Agreement stated that "[t]he Trust has served its purpose and it is not necessary that the Trust Assets be held further." Accordingly, it provided that "the Trust should be, and in equity is, hereby terminated,

2

and . . . the Trust Assets should be distributed to the Beneficiaries in equal shares." The Distribution Agreement described the Trust's assets as "35 shares of the common shares of Idaho Supreme Potatoes, Inc., . . . and certain life insurance policies."

Margaret Chapman passed away in June 2018, and Bill passed away in October 2018. Wade applied for the death benefit under the Jackson Policy in November 2018. Wade did not know he was named the sole beneficiary of the policy until he applied for the benefit and was informed of this by a representative at the Jackson National Life Insurance Company. According to Wade, he told the representative that his "understanding [was] that [the policy] was a trust asset and the beneficiary was to be . . . the trust," with the proceeds to be divided equally between him and his siblings. However, after the death benefit was paid to Wade, he kept all $7,000,000.

Siblings subsequently filed a complaint against Wade in district court alleging, among other things, breach of fiduciary duty. A month later, the district court entered an order based upon a stipulation of the parties requiring Wade to deposit $6,000,000 with the court pending resolution of the case.

During the course of discovery, Siblings filed a motion for leave to amend their complaint to add an additional cause of action for mutual mistake of fact after learning that Wade shared Siblings' understanding that the Jackson Policy was a Trust asset at the time he applied for the death benefit and that the Trust was also the beneficiary. Siblings sought reformation of the Jackson Policy by the district court.

Shortly after moving to amend their complaint, Siblings filed a motion for summary judgment on their breach of fiduciary duty claim and their claim seeking reformation of the Jackson Policy. The following day, Wade also filed a motion for summary judgment. Wade advanced three primary arguments in support of his motion: (1) the Jackson Policy was unambiguous in its designation of him as the sole beneficiary of the policy, (2) he did not owe fiduciary duties in 2018 when the death benefit was distributed because the Trust had been terminated by the Distribution Agreement in 2007, and (3) any claims for breach of contract or breach of fiduciary duty were barred by the statute of limitations. Wade also filed a motion "to strike any and all deposition testimony and any references to the intent of any Grantor or Trustee expressed outside of" the Trust, Jackson Policy, or Distribution Agreement.

In July 2020, the district court issued an order addressing Siblings' motion to amend,

3

Wade's motion to strike, and both parties' motions for summary judgment. First, the district court denied Wade's motion to strike and granted Siblings' motion to amend their complaint based on Wade's testimony. However, it ultimately denied Siblings' request for reformation because the alleged mutual mistake of fact was not between the parties to the Jackson Policy (i.e., the insurance company and the insured), but "a unilateral mistake of fact amongst parties on the same side of a contractual bargain." Despite this, the district court granted Siblings' motion for summary judgment regarding their breach of fiduciary duty claim and denied Wade's motion for summary judgment on all claims, holding that each of his arguments was without merit.

After prevailing on their claim, Siblings filed a memorandum of costs and attorney fees, alleging they were entitled to an award of fees under Idaho Code section 15-8-208, a provision of TEDRA. Wade filed a motion for reconsideration the same day. Two weeks later, Wade objected to Siblings' motion for attorney fees, arguing that it was premature and that the fees provision of TEDRA did not apply. The district court agreed with Wade that the motion was premature but held that the fees provision of TEDRA applied to the case.

In February 2021, the district court entered an order granting Siblings' motion for voluntary dismissal of their unresolved claims. Given its prior orders, the district court agreed with Siblings that the remaining claims sought essentially the same relief it had already granted, and that it was appropriate to dismiss the claims without prejudice.

Siblings subsequently submitted a proposed final judgment, which included an award of prejudgment interest under Idaho Code section 28-22-104 in the amount of $1,548,000.00, minus interest actually earned while on deposit with the court, resulting in an outstanding total of $1,432,393.65. Wade objected to the proposed judgment, arguing that prejudgment interest could not properly be awarded under section 28-22-104. After further briefing, the district court held a hearing to address the proposed judgment. The district court issued an oral ruling, holding that prejudgment interest was due to Siblings under section 28-22-104. Furthermore, because interest had continued to accrue in the three months since the proposed judgment had first been filed, the district court ordered Siblings to submit a revised proposed judgment reflecting the increased total. The district court signed a judgment awarding Siblings $1,755,616.44 in prejudgment interest, minus interest actually earned, resulting in an outstanding total of $1,603,521.66. The district court subsequently entered an order awarding Siblings attorney fees in the amount of $148,551.45 pursuant to TEDRA. Wade timely appealed.

4

## II. STANDARD OF REVIEW

"In reviewing a district court's ruling to grant a motion for summary judgment, this Court employs the same standard used by the district court originally ruling on the motion." *Black v. DJO Glob., Inc.*, 168 Idaho 849, 851, 488 P.3d 1283, 1285 (2021) (citing *Eldridge v. West*, 166 Idaho 303, 308, 458 P.3d 172, 177 (2020)).

> The party initially bringing the motion has the burden to prove that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. After the moving party meets this burden, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. This Court will construe the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences in that party's favor. However, the adverse party may not rest upon mere allegations in the pleadings but must set forth by affidavit specific facts showing there is a genuine issue for trial.

*Boise Mode, LLC v. Donahoe Pace & Partners Ltd.*, 154 Idaho 99, 103–04, 294 P.3d 1111, 1115–16 (2013) (citations and quotation marks omitted).

## III. ANALYSIS

### A. The district court properly granted summary judgment to Siblings on their breach of fiduciary duty claim.

A trustee owes a fiduciary duty of loyalty to "administer the trust in the interest of the beneficiaries alone, and to exclude from consideration his own advantages and the welfare of third persons." *Taylor v. Maile*, 142 Idaho 253, 260, 127 P.3d 156, 163 (2005) (quoting *Edwards v. Edwards*, 122 Idaho 963, 969, 842 P.2d 299, 305 (Ct. App. 1992)). Consistent with this principle, Idaho Code section 68-108 requires a trustee to obtain court approval before engaging in a transaction where his personal interest conflicts with his interest as a trustee. I.C. § 68-108(b). Generally, good faith is not a defense to a breach of the fiduciary duty of loyalty because "[i]n enforcing the duty of loyalty the court is primarily interested in improving trust administration by deterring trustees from getting into positions of conflict of interests, and only secondarily in preventing loss to particular beneficiaries or unjust enrichment of the trustee." *Edwards*, 122 Idaho at 969, 842 P.2d at 305 (quoting G.G. Bogert & G.T. Bogert, Law of Trusts § 95 (5th ed. 1973)).

Article II, section 1 of the Trust provides that it is to be administered for the benefit of all seven Chapman siblings. In granting summary judgment to the siblings, the district court held that "[b]y keeping the entirety of the Jackson Policy proceeds for himself, Wade engaged in a disloyal transaction." Furthermore, it held that regardless of whether Wade acted under a good

5

faith belief that the death benefit was solely his to retain, he could not do so without court authorization.

Wade argues that the district court erred by holding he breached his duty of loyalty for five reasons: (1) it was permissible for contributions to the Trust to be designated for the benefit of specific beneficiaries and the Jackson Policy was intended to benefit him alone, (2) he owed no fiduciary duties anyway because the Trust was terminated by the Distribution Agreement in 2007, (3) even if the Trust did exist when the death benefit was paid in 2018, any breach would have occurred many years prior and is now barred by the statute of limitations, (4) Idaho Code section 68-106(c)(1) allows a trustee to retain an asset in which he is personally interested without court authorization, and (5) "[t]here is no document that expressly added the Jackson Policy to the Trust." None of these arguments have merit.

1. <u>No evidence supports that the Jackson Policy was intended for Wade's benefit alone.</u>

Wade argues that Bill, as grantor of the Trust, had a right to make contributions to the Trust after it was established and, furthermore, that Bill had the right to direct that a contribution be made unequally among beneficiaries.

Article II, section 2 of the Trust provides that separate trusts were to have been established for each beneficiary:

> SEPARATE TRUSTS: The Trustee shall establish a separate trust for the benefit of each beneficiary. An equal portion of each contribution to the Trust, by anyone other than a beneficiary, shall be allocated to each beneficiary's trust unless any contribution is specifically designated to one specific trust or in specific portions among the separate trusts by the donor in which event the Trustee shall allocate the contribution in accordance with the written instructions of the donor.

Insofar as Wade argues it would have been permissible for Bill to have contributed the Jackson Policy to a separate trust established for Wade's benefit, he is correct. However, Wade's argument that Bill contributed the Jackson Policy to a specific trust for Wade under Article II, section 2 is not supported by any facts in the record.

First, no facts support Wade's claim that the Jackson Policy was Bill's to contribute in the first place. The application for the policy indicates it was acquired in a 1035 exchange with the Phoenix Home Life policy, which belonged to the Trust, not to Bill. Nor do any facts suggest that Bill paid premiums on the Jackson Policy.

Next, there are no facts alleged to support the assertion that separate trusts were ever created for the benefit of Wade or any other beneficiary. Wade argues this is not so because

6

Article II, section 2's language is mandatory: "[t]he Trustee shall establish a separate trust" for each beneficiary. Even though Wade was a trustee tasked with the duty to establish individual trusts, he did not provide evidence supporting that he or his co-trustees took steps to do so, discussed individual trusts, or paid taxes on individual trusts. Indeed, there is no mention of individual trusts anywhere in the record outside of Wade's allegations. In opposing a motion for summary judgment, a "party may not rest upon mere allegations in the pleadings but must set forth by affidavit specific facts showing there is a genuine issue for trial." *Boise Mode, LLC*, 154 Idaho at 104, 294 P.3d at 1116. Here, there is nothing beyond Wade's allegations to support his argument.

Finally, Wade posits that if Bill did not intend the Jackson Policy to be for Wade's individual benefit, then the trustees did. While this argument is consistent with the Policy Data Page of the Jackson Policy, it offers Wade no relief. Article III, section 3 of the Trust allows the Trust to acquire insurance policies (including in individual trusts for each beneficiary), but it requires that the trust holding a policy must also be designated as the beneficiary of the policy:

> INSURANCE RELATED POWERS: The Trustee shall have the following additional powers:
>
> a. To acquire in any trust . . . one or more policies insuring the life of any beneficiary of the trust or any person in whom any beneficiary has an insurable interest, and to retain each policy as a part of the property of the trust, *provided, however, that as long as any policy constitutes a part of the property of the trust, the benefits thereunder shall be payable* **to that trust.**

(Emphasis added). Because the Policy Data Page names the Trust as the owner of the policy, it must also be the beneficiary of the policy under the terms of the Trust. To the extent Wade argues that the trustees acquired the Jackson Policy but intended to name his individual trust as its sole beneficiary, he is essentially arguing that the trustees—himself included—intentionally breached the terms of the Trust.

In sum, no facts support Wade's position that Bill contributed the Jackson Policy or its death benefit to an individual trust established for Wade's benefit. The Jackson Policy named the Trust as its owner. Whether by accident or intention, the Trust was not named as the beneficiary of the policy's death benefit. Such an arrangement was expressly prohibited by the Trust. Because Wade failed to comply with the terms of the Trust and distributed the death benefit only to himself, the district court correctly concluded Wade breached his fiduciary duty of loyalty.

7

2. The district court did not err in determining that Wade owed fiduciary duties because the Distribution Agreement did not terminate the Trust.

Next, Wade argues that: (1) the Distribution Agreement stated that the Trust was terminated and its provisions control, (2) the district court erroneously concluded that the Trust continued to hold property after 2007, and (3) he is indemnified from liability by the terms of the Distribution Agreement.

In his first argument, Wade asserts that the written terms of the Distribution Agreement control and "[t]here was no language indicating that there would be a winding up period." Furthermore, he argues that "[w]ords of contracts have meaning. The plain meaning in this case is that the Trust would not hold assets after the execution of the agreement. . . . The actions or inactions of the parties do not matter. The Distribution Agreement stated that the assets were distributed and released from the Trust." Regardless of whether the Distribution Agreement stated there would be a winding up period, the law is clear that trustees owe fiduciary duties until a trust is wound up. *See Taylor v. Maile*, 146 Idaho 705, 710, 201 P.3d 1282, 1287 (2009). And, in determining whether the Trust was wound up, the actions and inactions of the parties, do, in fact, matter.

Second, Wade argues that the district court erred in concluding that the Jackson Policy was a Trust asset because an equitable share of its cash surrender value was distributed to each of the beneficiaries in 2007. However, there is no evidence in the record that Siblings ever had a right to surrender the Jackson Policy for its cash value. Under the terms of the Jackson Policy, only the owner of the policy has the right to surrender it, and any change of ownership must be made by written request to the insurance company. Yet, there is no evidence that the ownership of the Jackson Policy was transferred from the Trust to the beneficiaries.

Third, Wade argues that the following provision in the Distribution Agreement relieves him from any potential liability:

> **Beneficiary Estoppel Statement and Indemnity.** Beneficiaries, *each for themselves, acknowledge and agree that this distribution and termination is done at the request of Beneficiaries for the benefit of the Beneficiary, and that the Trust Assets will be released from trust to the Beneficiaries in equal shares*. Each Beneficiary agrees that they will have no standing to ever complain, and will be estopped from complaining against Grantors, Trustees, any other Beneficiary, or any other party that the distribution and termination of the trust was wrongful or injured Beneficiary in any regard. Each Beneficiary, pro rata, agrees to indemnify, hold harmless and defend, the trustees from any claims of any person arising out

8

of the termination and distribution of the Trust Assets.

(Emphasis added.) However, as the district court held, this provision is conditioned on the distribution and termination of the Trust in equal shares. Because this never happened—and Wade offers no cogent argument to the contrary—this provision does not relieve Wade from liability.

For the above reasons, we hold that the district court correctly determined that Wade continued to owe fiduciary duties after the execution of the 2007 Distribution Agreement.

3. <u>The district court did not err in determining that the statute of limitations had not run.</u>

The catchall four-year statute of limitations in Idaho Code section 5-224 applies to claims alleging breach of fiduciary duty. *Doe v. Boy Scouts of Am.*, 159 Idaho 103, 109, 356 P.3d 1049, 1055 (2015). According to Wade, the breach alleged by Siblings occurred in 2004, when the Jackson Policy was first acquired and named Wade as the sole beneficiary. Siblings disagree, arguing the relevant breach occurred when he repudiated the terms of the Trust and distributed the death benefit to himself. The district court noted that "[a] contract may be breached in more than one way" and the breach relevant to its decision was Wade's repudiation of his duties in 2018. We agree with the district court's analysis. While the designation of Wade as the sole beneficiary of the death benefit may have constituted a breach of fiduciary duty in 2004 because it was done in violation of Article III, section 3 of the Trust, Wade's unilateral decision in December 2018 to retain the entire $7,000,000 death benefit for himself was a separate, actionable breach of fiduciary duty that violated Article II, section 1 of the Trust requiring the Trust to be administered for the benefit of all seven siblings. Siblings filed their claim within months of Wade's 2018 breach of fiduciary duty, so it is well within the statute of limitations.

4. <u>The district court did not err in holding that Wade was required to obtain court authorization before distributing the death benefit to himself.</u>

As noted above, Idaho Code section 68-108(b) provides that a trustee must obtain court approval before engaging in a transaction that creates a conflict of interest. Wade argues that the district court erred by holding he violated this statute because Idaho Code section 68-106(c)(1) provides that a trustee may retain an asset in which he has an interest.

Idaho Code section 68-106 provides that a trustee may hold property in which he is personally interested without court authorization, but only under certain conditions:

(a) From time of creation of the trust until final distribution of the assets of the trust, a trustee has the power to perform, without court authorization, every act

9

which a prudent man would perform *for the purposes of the trust* including but not limited to the powers specified in subsection (c).

(b) In the exercise of his powers including the powers granted by this act, a trustee has a duty to act *with due regard to his obligation as a fiduciary*.

(c) A trustee has the power, subject to subsections (a) and (b):

(1) to collect, hold, and retain trust assets received from a trustor *until, in the judgment of the trustee, disposition of the assets should be made*; and the assets may be retained even though they include an asset in which the trustee is personally interested

I.C. § 68-106 (emphasis added). Thus, a trustee's power to retain assets in which he is interested under section 106(c) is subject to three conditions: the retention must be (1) for the purposes of the trust, (2) consistent with the trustee's fiduciary duties, and (3) only until a future distribution. Inasmuch as the district court held that Wade distributed the entirety of the Jackson Policy to himself in violation of the Trust's terms and his fiduciary duty, its decision is not inconsistent with section 106(c)(1) in any way.

Wade also asserts that he was unaware that the Jackson Policy named him as beneficiary when he signed it, and that because the Trust was terminated in 2007, he could not have been in breach of his duty in 2018. The first is a good faith argument, which is not a defense to a claim that a trustee has breached the duty of loyalty. *Edwards*, 122 Idaho at 969, 842 P.2d at 305. Even if it were, the district court held that the relevant breach was Wade's refusal to distribute the funds in 2018, not the acquisition of the Jackson Policy in 2004. The second argument is meritless, because the Trust did not terminate in 2007 (as discussed above).

5. Wade's argument that it is unclear whether the Trust owned the Jackson Policy is without merit.

Finally, Wade asserts that "[t]here is no document that expressly added the Jackson Policy to the Trust" and the Court should not have to assume that it did. Wade argues that "[o]n this point alone, Siblings' argument should fail."

This argument is also unavailing. Most importantly, this argument is waived because it is raised for the first time in Wade's reply brief. *Bell v. Idaho Dep't of Labor*, 157 Idaho 744, 749, 339 P.3d 1148, 1153 (2014) (quoting *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004)) (holding that the Court "will not consider arguments raised for the first time in the appellant's reply brief"). Even if we were to consider it, Wade's argument is contrary to the face of the Jackson Policy, which lists the Trust as its owner. Moreover, the application for

10

the policy indicates it was acquired in a 1035 exchange with the Phoenix Home Life policy, which no one disputes belonged to the Trust. Wade conceded below that the Trust owned the Jackson Policy. In fact, in his motion for summary judgment, Wade asserted that it was an "undisputed fact" that the Trust owned the policy.

Ultimately, every argument raised by Wade regarding Siblings' breach of fiduciary duty claim is without merit. Thus, we affirm the district court's decision granting summary judgment in favor of Siblings.

**B. The district court did not err by granting Siblings' motion for voluntary dismissal of several claims, nor by dismissing Wade's motion for reconsideration.**

Wade argues that the district court erred by denying summary judgment in his favor. Wade is incorrect. Most of Wade's arguments reflect the same arguments as above, and as such, are incorrect. Because Wade's arguments above are without merit, we dismiss these arguments as duplicative of his others. Further, while Wade complains in each argument that the district court denied summary judgment in his favor, "denial of summary judgment by a district judge is not appealable unless the district judge was acting as an appellate court or unless we grant permission to appeal." *N. Pac. Ins. Co. v. Mai*, 130 Idaho 251, 252–53, 939 P.2d 570, 570–72 (1997) (citing I.A.R. 11(a)(1), I.A.R. 12 and *Bluestone v. Mathewson*, 103 Idaho 453, 454, 649 P.2d 1209, 1210 (1982)). Here, the district court was not sitting in an appellate capacity nor is this a permissive appeal.

**C. The case is remanded to the district court to recalculate prejudgment interest and enter an amended judgment.**

The district court awarded Siblings prejudgment interest under Idaho Code section 28-22-104 calculated from the time the death benefit was wired to Wade until judgment was entered. The district court, highlighting that there was a substantial amount of time between when Wade received the money and when he eventually turned it over to the court, held that the scenario described in 28-22-104(4) ("[m]oney received to the use of another and retained beyond a reasonable time without the owner's consent, express or implied,") was applicable in this case. The total amount awarded was $1,603,521.66.

Wade challenges this award, arguing primarily that prejudgment interest can only be awarded in cases involving commercial transactions. Alternatively, he argues that even if prejudgment interest was proper, it should not have accrued once he stipulated to deposit the

insurance proceeds with the district court. We hold that while the district court did not err in awarding prejudgment interest to Siblings under Idaho Code section 28-22-104(4), the accrual of interest started on December 26, 2018, and ended on August 8, 2019, when Wade deposited the money with the district court. We remand the case with instructions to recalculate the prejudgment interest owed and enter an amended judgment to reflect that amount.

Idaho Code section 28-22-104 provides for the award of prejudgment interest under certain circumstances:

> (1) When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of twelve cents (12¢) on the hundred by the year on:
>
> > 1. Money due by express contract.
> >
> > 2. Money after the same becomes due.
> >
> > 3. Money lent.
> >
> > 4. Money received to the use of another and retained beyond a reasonable time without the owner's consent, express or implied.
> >
> > 5. Money due on the settlement of mutual accounts from the date the balance is ascertained.
> >
> > 6. Money due upon open accounts after three (3) months from the date of the last item.
>
> (2) The legal rate of interest on money due on the judgment of any competent court or tribunal shall be the rate of five percent (5%) plus the base rate in effect at the time of entry of the judgment. . . .

The district court held that Siblings were due prejudgment interest on two bases under 28-22-104(1): (1) "[m]oney after the same becomes due" and (2) "[m]oney received to the use of another and retained beyond a reasonable time . . . ."

Wade argues that the district court erred in awarding prejudgment interest because Idaho Code section 28-22-104 is codified under Title 28 of the Idaho Code, which is titled "Commercial Transactions." Because this dispute does not involve a commercial transaction, Wade argues that the statute cannot apply. However, nothing in the plain language of the statute confines its operation to commercial transactions.

Wade also argues that the district court erred in relying on *Hunsaker v. Hunsaker*, 117 Idaho 192, 786 P.2d 583 (Ct. App. 1990), to hold that awards of prejudgment interest under section 28-22-104 are not confined to commercial transactions. In *Hunsaker*, the Idaho Court of Appeals affirmed an award of prejudgment interest in a dispute over child support payments.

12

*Hunsaker*, 117 Idaho at 194, 786 P.2d at 585. Because the award in *Hunsaker* involved interest under subsection (2) of section 28-22-104 ("money due on the judgment of any competent court"), rather than subsection (1), which the district court applied below, Wade argues that the case is distinguishable. However, the district court used *Hunsaker* to illustrate that the codification of the prejudgment interest statute in Title 28 does not mean that its operation is confined to commercial transactions. Because both subsections of the statute are contained in Title 28, the district court did not err in its reliance on *Hunsaker*.

In its decision, the district court noted that *Harris v. Coates*, 8 Idaho 491, 69 P. 475 (1902), also supported its award of prejudgment interest in a case not involving a commercial transaction. In *Harris*, this Court held that a district court erred by not awarding statutory prejudgment interest in a dispute between family members over the distribution of a decedent's estate. *Harris*, 8 Idaho at 96, 69 P. at 476–77. Wade argues that the district court erred because "it failed to analyze whether the applicable statute in 1902 contained the same language as today's statutory interest legislation." Because the prejudgment interest statute in effect in 1902 and the current version of Idaho Code section 22-28-104(1) are identical except for the rate of interest to be awarded, this argument is meritless. *Compare* I.C. § 28-22-104(1) *with* 1933 Idaho Sess. Laws 390–91 (providing the text of the statute in effect from 1899 to 1933).

Lastly, Wade argues that it was improper for the district court to award prejudgment interest because he voluntarily deposited the funds with the district court. Thus, Wade contends he "was not exercising control over the money" and if Siblings "believed they were being unfairly deprived use of money" they should not have stipulated to its deposit with the Court.

Applying the plain language of section 28-22-104(4) to the facts, Wade received the death benefit from the insurance company via wire on December 26, 2018, and retained the money for his own use without the consent of Siblings. His retention of that money was unreasonable from the outset, but he eventually stipulated to deposit the money with the district court on August 8, 2019. Once he deposited the money with the district court he no longer "retained" the money and prejudgment interest should have ceased at that time. Accordingly, we remand the case with instructions to recalculate the prejudgment interest owed and enter an amended judgment to reflect the new amount.

**D. The district court erred in awarding attorney fees to Siblings under TEDRA.**

The district court awarded attorney fees to Siblings under Idaho Code section 15-8-208, the attorney fee provision of TEDRA. Siblings brought a judicial proceeding under TEDRA as part of their initial and amended complaints. Their Eleventh Cause of Action was captioned as "Declaratory Judgment – Idaho Code §§ 10-1201 et seq., 15-8-201 et seq., I.R.C.P. 57". The remedy Siblings prayed for was a decree that Wade violated the Trust and breached his fiduciary duties as trustee:

> 135. Plaintiffs are entitled to a Declaratory Judgment, pursuant to Idaho Code §§ 10-1201 et seq., § 15-8-201 et seq., and I.R.C.P. 57 adjuring and decreeing that Defendant Wade Chapman has violated the terms of the Trust Agreement and Distribution Agreement, has breached his fiduciary duties as Trustee, and is required to distribute the proceeds from the Insurance Policy in accordance with the terms of the Trust Agreement and Distribution Agreement.

Following the district court's grant of summary judgment, Siblings submitted a memorandum of costs and attorney fees seeking an award under TEDRA. Wade objected to the award, arguing among other things, that it was premature and that TEDRA did not apply because Siblings had not pursued any form of relief under the statute. The district court sustained Wade's objection, holding an award of attorney's fees was premature because there were unresolved claims, and the court was unable to engage in the prevailing party analysis required under Rule 54 of the Idaho Rules of Civil Procedure.

Citing judicial expediency, however, the district court's decision also went on to analyze the statutory basis for Siblings' claim for attorney fees. The district court held that TEDRA governed Siblings' claims, explaining that the complaint included a declaratory judgment claim expressly invoking TEDRA and reasoning that the other claims for relief fell squarely within the definition of "matter" in Idaho Code section 15-8-103(1)(c). About a month after the district court's ruling on the attorney's fees award, Siblings moved to dismiss the remaining claims in their complaint without prejudice, including, the Eleventh Cause of Action requesting declaratory relief under TEDRA. The district court subsequently granted that motion.

After the voluntary dismissal of their remaining claims, Siblings again filed a memorandum of costs and attorney fees. The district court noted that it had already determined that TEDRA applied to the request for fees and concluded that an award of fees in the amount of $148,551.45 was equitable.

14

Wade's primary arguments against the award are that although Siblings invoked TEDRA as part of the declaratory judgment claim set forth in their complaint, they did not pursue that claim as part of the litigation, it was not part of the claim upon which relief was granted, and Siblings voluntarily dismissed the claim after the district court granted summary judgment in their favor. We agree with Wade that an award of attorney fees under TEDRA was improper.

We review a district court's award of attorney fees for an abuse of discretion. *Lola L. Cazier Revocable Tr. v. Cazier*, 167 Idaho 109, 115, 468 P.3d 239, 245 (2020). When applying the abuse of discretion standard, the Court asks whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). In this case, we are focused on the legal standard for awarding attorney fees under TEDRA.

TEDRA provides for an equitable award of costs and attorney fees by the trial court and on appeal. I.C. § 15-8-208. The purpose of TEDRA is to provide nonjudicial methods for the resolution of estate and trust matters by agreement. I.C. § 15-8-101(2). TEDRA also provides for judicial resolution of disputes. *Id.* When it comes to judicial resolution, TEDRA provides that any party may have a judicial proceeding *for the declaration of rights or legal relations* with respect to any "matter" defined in section 15-8-103, or with respect to the resolution of any other case or controversy. I.C. § 15-8-201(1)(a) and (b) (emphasis added). A "matter" is defined as "any issue, question, or dispute involving… the determination of any question arising in the administration of an estate or trust." I.C. § 15-8-103(1)(c). TEDRA goes on to say, "[a] judicial proceeding under this chapter may be commenced as a new action or as an action incidental to an existing judicial proceeding relating to the same trust or estate or nonprobate asset." I.C. § 15-8-202(2). "Once commenced, the action may be consolidated with an existing proceeding or converted to a separate action upon the motion of a party for good cause shown, or by the court on its own motion." I.C. § 15-8-202(3).

In ruling that attorney fees were available to Siblings under TEDRA, the district court reasoned:

> On summary judgment the Court was required to construe the Trust, Distribution Agreement, and the Jackson Policy to determine questions arising from the Trust's administration—endeavors falling with the scope of section 15-8-

15

103(1)(c). The Court's involvement in this action falls squarely within the definition of a "matter" under section 15-8-103(1)(a) and is an authorized judicial proceeding pursuant to section 15-8-201(1).

The focus of the district court's analysis was whether Siblings' claims fell within the definition of a "matter." We agree with Wade, however, that whether attorney fees can be granted under TEDRA turns first on the form of relief sought and granted.

At its core, TEDRA provides a statutory cause of action for a declaratory judgment. The operative language is in section 15-8-208(1), which states "any party may have a judicial proceeding for the *declaration of rights or legal relations . . . .*" I.C. § 15-8-201 (emphasis added). This language is substantially similar to the Uniform Declaratory Judgment Act which states in part "Courts of record within their respective jurisdictions shall have power to *declare rights,* status, and *other legal relations*, whether or not further relief is or could be claimed." I.C. § 10-1201 (emphasis added). While we agree with the district court that it was required to construe the terms of the Trust, Distribution Agreement, and the insurance policy, that analysis was all part and parcel of Siblings' breach of fiduciary duty claim, not part of their claim to "declare" rights or legal relations under the Trust or Distribution Agreement. In a declaratory judgment action, the final judgment itself "declares" the rights and legal relations. There was no such relief granted in the judgment entered by the district court nor was it sought by Siblings after the filing of the complaint. In fact, the claim for declaratory relief was dismissed before the district court granted Siblings attorney fees. If this case, by way of example, had been brought before the insurance proceeds had been paid, a "declaration" by the district court in a final judgment that Wade had a fiduciary duty to distribute the funds equally to Siblings would have been proper. As it stands, the district court granted full relief to Siblings for their breach of fiduciary duty claim without the necessity of any declaratory judgment. For these reasons, we reverse the district court's grant of attorney fees to Siblings under TEDRA.

**E.  Siblings are not entitled to costs or attorney fees on appeal.**

Siblings request an award of attorney fees and costs on appeal. Because of the mixed results of this appeal, we hold that neither party prevailed and deny Siblings' requests.

## IV.  CONCLUSION

For the reasons above, we vacate the judgment of the district court and remand this case for entry of an amended judgment consistent with this opinion.

Chief Justice BEVAN, and Justices STEGNER, MOELLER and ZAHN CONCUR.