**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 51838**

| | |
|---|---|
| RYAN MONSON, an individual,      ) | |
|      ) | |
|      Plaintiff-Appellant-     ) | **Blackfoot, October 2025 Term** |
|      Cross Respondent,      ) | |
|      ) | **Opinion Filed: March 18, 2026** |
| v.      ) | |
|      ) | **Melanie Gagnepain, Clerk** |
| NANCY J. MONSON, individually, and      ) | |
| TAUTPHAUS PARK STORAGE, LLC, an      ) | **SUBSTITUTE OPINION.THE** |
| Idaho limited liability company; and NANCY      ) | **COURT'S PRIOR OPINION DATED** |
| J. MONSON, Personal Representative of the      ) | **DECEMBER 23, 2025, IS HEREBY** |
| ESTATE OF HAL LAMAR MONSON,      ) | **WITHDRAWN.** |
|      ) | |
|      Defendants-Respondents-      ) | |
|      Cross Appellants.      ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Andrew R. Woolf, Magistrate Judge. Bruce L. Pickett, District Judge.

The judgments of the magistrate and district courts are <u>vacated</u>, the orders dismissing parties and claims are <u>reversed</u>, and the case is <u>remanded</u>.

Parsons Behle & Latimer, Idaho Falls, for Appellant, Ryan Monson. John E. Cutler argued.

Beard St. Clair Gaffney PA, Idaho Falls, for Respondents, Nancy J. Monson, individually, and Tautphaus Park Storage LLC. John Avondet argued.

Merrill & Merrill, Chtd., Pocatello, for Respondent Nancy J. Monson, as personal representative of the Estate of Hal Lamar Monson. Mary E. Shea argued.

———————————

MEYER, Justice.

This appeal arises from a dispute between siblings, Ryan and Nancy J. Monson, regarding their father's ownership interest in Tautphaus Park Storage, LLC (TPS), and the administration of the estate of their father, Hal Monson.[1] Following the district court's judgment dismissing Ryan's

---

[1] Because the parties share the same surname, Ryan Monson, Nancy Monson, and Hal Monson will be referred to by their first names.

complaint, Ryan appealed from the judgments that incrementally dismissed his claims against his sister, both in her individual capacity and in her capacity as personal representative of their father's estate.[2] Ryan's complaint sought a judicial determination of their respective rights and interests in Hal's estate under the Idaho Trust and Estate Dispute Resolution Act (TEDRA), following Nancy's acquisition of TPS through amendments to its operating agreement made after their father's passing.

For the reasons explained below, we vacate the judgments issued by the magistrate court and the district court. We reverse, in part, the magistrate court's order entered on May 31, 2022, captioned as "Orders," which dismissed Ryan's causes of action alleged against Nancy and TPS for judicial determination of the estate and breach of fiduciary duty because Nancy is a necessary party and TPS is a nominal party. In addition, we reverse, in part, the district court's order entered on February 23, 2024, captioned as "Memorandum Decision on Plaintiff's Motion to Reconsider, Plaintiff's Motion for Partial Summary Judgment, Defendant's Motion to Dismiss, and Defendant's Motion for Summary Judgment" because Ryan's claims for judicial determination of the estate and breach of fiduciary duty fall within TEDRA's definition of "matters" and may be raised in a separate civil action.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Ryan and Nancy are siblings disputing the administration of Hal's estate and the status of Hal's ownership interest in TPS, a limited liability company he founded to operate a storage facility. Nancy, an Idaho-licensed attorney, served as Hal's lawyer, drafted his last will and testament, and acted as his power of attorney before his death. After Hal passed, she became the personal representative of his estate. A third sibling, whom Hal intentionally omitted from his will, is not involved in this case. Although the record does not contain a copy of the will or the power of attorney, the parties agree that Ryan and Nancy are equal beneficiaries of Hal's estate.

When Hal died on July 29, 2019, he suffered from dementia. The date of the onset of his dementia is unclear, but the record reflects progressive memory impairment. Correspondence from

---

[2] We distinguish between Nancy's various roles to avoid confusion regarding her involvement in the litigation. "Nancy, as personal representative" refers specifically to her role as the personal representative of Hal's estate. "Nancy" denotes her individual capacity. "Nancy, in both capacities," indicates her individual and personal representative roles combined. If she acted in other capacities, such as attorney for her father or TPS, that will be indicated.

Nancy to Ryan in 2019 describes "significant symptoms" beginning in 2014, and Nancy later declared in the probate case that Hal "began to suffer the debilitating effects of memory loss as early as 2011."

Hal formed TPS on July 23, 2001, serving as manager and sole voting member. He contributed real property valued at $737,605 as its initial capital. Nancy states that she became actively involved in TPS's operations beginning in 2003, providing legal services and assisting with amendments to the company's operating agreement, policies, and management issues.

TPS's ownership and control changed over time. In a second amendment to the operating agreement[3] dated March 11, 2015, which was made retroactive to July 25, 2008, Hal added Nancy as a non-voting member. Both Hal and Nancy signed the amendment, and it was notarized. In a third amendment executed in May 2018, Hal resigned as manager "under permanent disability," resulting in Nancy becoming the manager and the sole voting member. Hal retained non-voting status. This amendment was signed by both Hal and Nancy but was not notarized.

After Hal's death, and shortly after Ryan had sent Nancy an email dated November 14, 2019, requesting a copy of the operating agreement, Nancy executed a fourth and a fifth amendment to the operating agreement, both of which purported to be retroactively effective as of January 1, 2017. These amendments were executed on December 3, 2019. The fourth amendment stated that Hal resigned all management and membership rights due to permanent disability, effective January 1, 2017, retaining only a diminished economic interest: 99 percent in 2017, and one percent from 2018 through his death in 2019. It also recast Hal's original capital contribution as a personal loan to TPS, and declared the loan fully repaid as of January 1, 2015. The amendment identified $334,484 in personal and in-kind contributions by Nancy between 2015 and 2018 and attached a "Loan Principal Repayment" exhibit containing a revised accounting. Nancy later described the fourth amendment as an effort to "memorialize" past events and changes to TPS.

In October 2019, Nancy terminated TPS's longtime accountant. According to the accountant, TPS's tax filings from 2013 to 2018 consistently reflected that Hal held a 99 percent ownership interest and Nancy held only one percent. None of the transactions described in the fourth amendment were reflected in those filings. With assistance from a new accountant, Nancy amended the 2018 K-1s for TPS, Nancy, and Hal to reverse the reported ownership percentages.

---

[3] Hal executed the first amendment, which is not relevant to the case, on April 14, 2006.

3

A Schedule K-1 tax form reports an individual's share of income, deductions, and credits from a partnership, S-corporation, or trust for that individual's income tax return.

In May 2022, Nancy sold TPS's assets for just over $3 million.

## B. Procedural Background

The procedural history in this matter is complicated, partially because the parties were involved in two cases: a magistrate court probate case, *In the Matter of the Estate of Hal Lamar Monson*, Bonneville County Case No. CV10-19-5680, and a district court TEDRA case, *Monson v. Monson*, Bonneville County Case No. CV10-21-1739, which is the subject of this appeal. Although no court order formally consolidated the two cases, the courts and parties often treated the cases as if they were consolidated, and the TEDRA action was reassigned several times between the district and magistrate courts. The overlapping proceedings produced a complicated record and repeated disputes, particularly over access to TPS's business records.

### 1. Probate proceeding and the initial TPS records dispute.

The probate case began in September 2019, when Nancy applied for informal probate of Hal's will and was appointed personal representative, with Ryan named as alternate personal representative. Ryan filed a demand for notice. Early in the probate case, Ryan repeatedly sought access to TPS's operating agreement, amendments, and related exhibits, as well as TPS's tax returns and Hal's personal tax returns from 2008 through 2019, to determine whether Hal retained a membership or economic interest in TPS at his death. Nancy, acting as personal representative, resisted those requests, characterizing TPS as a third-party entity and its records as irrelevant to the estate proceeding.

In March 2020, Nancy filed an inventory that listed, among other items, Nancy's claim for approximately $33,000 in out-of-pocket expenses related primarily to renovations of estate property. Although Nancy signed and filed the inventory as personal representative, it is unclear from the record in what capacity she claimed reimbursement. Nancy later purchased an estate property, the Vega condominium, asserting that Ryan agreed to the sale price and distribution of proceeds "to Nancy Monson at a value of $70,000.00 with Ryan Monson being paid directly his $35,000.00 share from Nancy Monson's separate funds."

Ryan eventually moved to have Nancy removed as personal representative, alleging a conflict of interest arising from her claimed ownership and control of TPS.

4

In November 2020, the magistrate court partially granted Ryan's second motion to compel, ordering Nancy to permit inspection of Hal's 2019 K-1, TPS's 2019 tax return, and TPS's operating agreement and amendments at her counsel's office, noting that those documents appeared relevant to determining Hal's interest in TPS.

After inspecting the operating agreement in January 2021, Ryan moved for an order allowing him to make copies of TPS's records. He argued that the documents undermined Nancy's claim that Hal had transferred his membership interest to her before death and showed that the amendments purporting to be effective January 1, 2017, were prepared and signed by Nancy months after Hal's death. Nancy, in both capacities, opposed the motion and framed the dispute as a nonprobate issue involving transactions that occurred before Hal's death.

At a February 2021 hearing in the probate case, Ryan asked whether the court preferred a judicial determination of Hal's TPS interest to be pursued within the probate case or in a separate civil action under TEDRA. Counsel for Nancy, as personal representative, and counsel for Nancy and TPS both agreed that such a dispute was more appropriately addressed in the district court in a separate action. Ryan also pressed for copies of TPS's operating agreement to attach to the contemplated TEDRA civil complaint. TPS opposed producing copies, characterizing his request as a matter for discovery in a new case.

*2. Ryan files the TEDRA action, which is then assigned to the magistrate court.*

On March 24, 2021, Ryan filed a verified complaint and demand for jury trial in district court against TPS and Nancy, in both her individual and personal representative capacities. Invoking TEDRA, he sought "a judicial proceeding to determine respective rights and interests in, and administer and settle all matters concerning," Hal's estate. The complaint alleged four causes of action: (1) judicial determination of estate assets, (2) breach of fiduciary duty, (3) fraud, and (4) appointment of a receiver. The complaint described the sequence of events, as reflected in TPS's operating agreement and amendments, culminating in Nancy obtaining complete ownership and control of TPS. Ryan detailed Hal's ongoing cognitive decline before his passing, while Nancy acted as Hal's attorney to revise his will and remove Hal as TPS's manager. From these alleged facts, Ryan claimed that Nancy, as personal representative, had fiduciary duties to the estate and its heirs; however, after she was appointed, she prepared the fourth amendment to the TPS operating agreement, "declaring she was the sole recipient of Hal Monson's 99% membership interest[] valued at $737,000." Ryan further alleged that Nancy had a "direct conflict of interest

5

where she is the personal representative of the Estate and the purported managing member of TPS."

In May 2021, in the TEDRA case, Ryan moved to appoint a receiver over TPS under Idaho Code section 8-601, asserting a probable interest in TPS and alleging that the assets and income of TPS were in danger of being lost or materially injured because Nancy had unlawfully asserted ownership and control over Hal's 99 percent membership interest. He asked the court to appoint a receiver to manage TPS and preserve its assets pending a determination of the ownership interest.

Nancy, as personal representative, opposed the motion, arguing that a receiver would improperly interfere with her duties and impose unnecessary costs. Around the same time, the administrative district judge entered a special assignment order, transferring the TEDRA case to the magistrate court judge presiding over the probate matter "for the purpose of consolidating these matters and presiding over the proceedings." No formal consolidation order was ever entered.

After the special assignment, the magistrate court orally granted Ryan's motion to appoint a receiver and initially appointed Kent Taylor. The court later stayed that order after Nancy disclosed a potential conflict because Taylor had served as a personal accountant for one of Nancy's attorneys. Nancy, as personal representative, also moved ex parte to stay the appointment, asserting that an existing loan to Bank of Idaho contained a provision declaring a default and increasing the interest rate to 18 percent if a receiver were appointed. It appears that the magistrate court treated the probate and TEDRA cases as if they were consolidated when it issued the order to stay the appointment of a receiver.

3. *Dispositive motions, partial summary judgment, and dismissal of claims.*

Meanwhile, Nancy filed a series of dispositive motions. In early January 2022, as personal representative, she moved for partial summary judgment, arguing: (1) that there were no genuine issues of material fact on Ryan's breach of fiduciary duty claim, (2) that he failed to plead fraud with particularity, (3) that he lacked standing to seek appointment of a receiver, and (4) that the receiver claim was unripe. Nancy seemed to treat the probate and TEDRA cases as one consolidated case, as the caption in her motion lists both cases together.

On January 6, 2022, the magistrate court, again treating the probate and TEDRA cases as if they were consolidated, heard multiple motions, including Ryan's motions to compel discovery responses and for sanctions, a motion under Idaho Code section 15-3-713 to void the transfer of Hal's TPS membership interest to Nancy, and a motion for an accounting. The court also heard

Nancy's motion for reconsideration of her previous motion to dismiss Ryan's claim for breach of fiduciary duty and fraud, and her second motion to dismiss Ryan's claim for appointment of a receiver. Ryan opposed Nancy's motions, arguing that the court must deny or stay the motion to dismiss to "allow [him] additional time to get the discovery . . . to answer the factual question" regarding the ownership of Hal's membership interest in TPS. The court granted Ryan's unopposed motion for an accounting, granted his motion to compel, awarded attorney fees as a sanction related to the second motion to compel, denied the motion to void the transfer as premature, and stayed the proceedings regarding Nancy's motion for reconsideration until discovery orders had been obeyed. The court took Nancy's pending motions to dismiss under advisement.

On May 31, 2022, the magistrate court issued a decision, treating the probate and TEDRA cases as consolidated, which granted Nancy's third motion to dismiss and motion for partial summary judgment, along with Nancy's motion, as personal representative, for partial summary judgment. The court acknowledged that Nancy had requested reimbursement for work she performed for the estate and described it as Nancy "simply claim[ing] a position for compensation." The court stated that Nancy's claim for reimbursement or compensation was "not fraud or breaching a fiduciary duty[,]" but represented "a difference of opinion" between Nancy and Ryan. Finally, it noted that the estate had not compensated Nancy, as personal representative, for her work to date, and the issue of reasonable compensation would be addressed later. Next, regarding Nancy's third motion to dismiss, the court explained:

> Fraud must be plead [sic] with particularity. Paragraphs 61-66 are not false statements. There is no factual basis for fraud that was sufficiently plead. Ryan recited the elements of a fraud claim in his complaint but fails to tie in the required facts to meet those elements.
>
> There also is no injury that Ryan has suffered. The estate is still open and Ryan has asked for a judicial determination of the estate. Nancy has only claimed for reimbursement for funds used from her account, not any funds that may have been used from Hal's account or insurance money. The [c]ourt fails to see any injury that Ryan has suffered from the alleged fraud.

The magistrate court's decision also partially granted Ryan's motion for partial summary judgment, explaining that:

> Nancy Monson claims that Hal transferred his interests in TPS to her before he passed away. This claim creates a genuine issue of material fact. [Ryan] also claims that the estate is the successor in interest to Hal Monson's membership interests in TPS. I do not think that this issue is disputed but what is disputed is what shares

did Hal own when he passed away. Therefore Summary Judgment is GRANTED on the issue that the estate is the successor in interest to Hal Monson's membership interests in TPS. What that interest was is still a triable issue.

On June 9, 2022, the magistrate court entered a judgment dismissing with prejudice all four causes of action that Ryan asserted in the TEDRA case against TPS and Nancy. The record does not clearly reflect the court's reasoning for dismissal of the judicial determination and breach of fiduciary duty claims against TPS and Nancy, individually. The June 9 judgment follows the court's May 31 decision, but the judgment goes further than its May 31 decision by dismissing TPS and Nancy, individually, as defendants from the TEDRA case altogether.

Shortly thereafter, Ryan moved to amend his TEDRA complaint to again name TPS and Nancy, in both capacities, and to assert the same causes of action for judicial determination of estate assets, breach of fiduciary duty, fraud, and constructive trust. The magistrate court granted leave to amend in October 2022 but, later that month, denied Ryan's motion to reconsider its June 9 judgment that dismissed all claims against TPS and Nancy, individually. In doing so, the court reiterated its view that TPS itself and its assets were not part of the estate; rather, the estate held only the membership interest that Hal owned at death, and his heirs would take the interest as transferees.

On September 6, 2022, Nancy provided Ryan with discovery responses nearly two years after Ryan served her with discovery in the probate case. In response to an interrogatory asking her to identify documents she reviewed regarding Hal's financial interest in TPS, Nancy objected that the request was "beyond the scope of permissible discovery," "not relevant to [Ryan]'s 'claims,'" and "not reasonably calculated to lead to the discovery of admissible evidence," characterizing it as an effort to "support the information she provided to the Probate Court in her Amended Inventory" rather than Ryan's litigation claims. She further labeled the interrogatory "vague and ambiguous, overbroad as to time and scope, and . . . cumulative," asserted that the estate "is not a party to this action," and maintained that TPS's business records were "private, confidential, and proprietary" and thus outside the scope of discovery.

In October 2022, Nancy's deposition testimony was equally evasive. For instance, when shown an exhibit that appeared to be the amended inventory she had filed in the probate case, Nancy repeatedly declined to recognize it, stating, "I don't know what this is," and "I can't verify that that is the . . . amended inventory," despite a typed electronic signature and a court filing certification. Nancy refused to answer numerous questions, stating "I'm not going to answer that

question." She invoked the attorney-client privilege to avoid answering questions concerning her preparation of Hal's will. When asked about Hal's competency in November 2017, Nancy responded:

> I'm not going to answer that question. It is irrelevant. It is what we're opposing today.
>
> . . . .
>
> . . . Again, you can speed this up. If you want to ask me something about the three allegations to your complaint, I will respond the best I can. I am not going to talk about 6-year-old e-mails. I'm not going to talk about my relationship with my father as a[n] attorney. I'm not going to talk about Tautphaus Park Storage. We're going to talk about breach of fiduciary duty.

She also asserted the accountant-client privilege to prevent TPS's new tax accountant from answering questions regarding Nancy's direction and his preparation of the amended 2018 K-1s for TPS, Nancy, and Hal, which reversed the reported ownership percentages previously reported to the Internal Revenue Service. In the original 2018 tax filings, Hal held a 99 percent ownership interest, while Nancy held only one percent. The magistrate court later granted Ryan's motion to compel and ordered TPS's new tax accountant to "answer in deposition questions that he was directed not to answer."

### 4. *Permissive appeals, jurisdictional confusion, and return to the district court.*

In December 2022, Nancy, in both capacities, filed a motion for permissive appeal under Idaho Appellate Rule 12, seeking review of several discovery and scheduling orders, including orders denying her motions for protective orders, granting extensions for Ryan to respond to dispositive motions, and granting Ryan's motion to compel and for sanctions. In January 2023, the magistrate court granted the motion for permissive appeal and stayed proceedings pending its resolution.

In February 2023, the district court denied the permissive appeal. It observed that the case had become "confusing and convoluted," in part because the probate and TEDRA cases were being treated as consolidated when no consolidation order existed. The court noted that the probate case had been marked as closed in the court's case management system without any formal order, and that filings were being directed into the TEDRA case "without order of the court." The district court declined to address discovery issues arising from the probate case and concluded that the issues presented did not warrant a permissive appeal.

The district court suggested two options "to disentangle the confusion" by either (1) keeping the probate and TEDRA cases separate, staying the probate case, and litigating the TEDRA case in district court before addressing any remaining probate issues, or (2) formally consolidating them and trying them together as a single case.

In August 2023, following Nancy's motion, as personal representative, to remove the TEDRA case to district court, the magistrate court concluded that it lacked authority over Ryan's tort claims exceeding $10,000 in light of this Court's decision in *O'Holleran v. O'Holleran*, 171 Idaho 671, 525 P.3d 709 (2023). In September 2023, the magistrate court stayed the probate proceeding pending resolution of the TEDRA case in the district court.

5. *District court proceedings, fee orders, and appeals.*

Back in district court, Ryan moved to consolidate the probate and TEDRA proceedings. The district court denied consolidation, reasoning that it would be inappropriate given the significant work already completed in the magistrate court. The court denied Ryan's motion to reconsider and motion for partial summary judgment, granted Nancy's motion to dismiss and motion for summary judgment, and dismissed Ryan's amended complaint with prejudice. The court dismissed Ryan's two remaining claims for judicial determination of estate assets and breach of fiduciary duty against Nancy, as personal representative, because the claims were "matters to be decided by the Probate Court." It also denied Ryan leave to file a second amended complaint, finding that his proposed claims would further blur the line between probate and tort claims.

After dismissal, Nancy, in both capacities, sought attorney fees under Idaho Code sections 12-121 and 15-8-208. In May 2024, the district court denied her request for attorney fees but awarded her $2,005.27 in costs. Ryan filed a timely notice of appeal on April 1, 2024. Nancy filed timely cross-appeals, challenging the denial of her attorney fee requests.

Separately, the record reflects ongoing discovery disputes over TPS's business records throughout both the probate and TEDRA proceedings. Ryan repeatedly moved to compel production of TPS's operating agreement, amendments, tax returns, and related records; the courts granted several of these motions and awarded Ryan attorney fees as a sanction against Nancy, yet Nancy and TPS continued to resist disclosure, at times arguing that the records were irrelevant to the estate and at other times that Ryan, as a mere transferee of Hal's interest in TPS, lacked the right to inspect TPS's records. Ryan ultimately obtained TPS records, some from third parties not

10

involved in the case, but only after substantial motion practice and after some of his claims had already been dismissed.

## II.     ISSUES ON APPEAL

1. Whether the district court erred in dismissing Ryan's claims for judicial determination of the estate and breach of fiduciary duty.

2. Whether TPS and Nancy are necessary parties in a judicial proceeding to determine rights and interest in, and to administer and settle matters concerning, Hal's estate under TEDRA.

3. Whether the district court abused its discretion in denying attorney fees to Nancy in either capacity.

4. Whether either party is entitled to attorney fees on appeal under Idaho Code section 15-8-208.

## III.     STANDARDS OF REVIEW

When this Court reviews an order dismissing an action for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Idaho Rules of Civil Procedure, we apply the same standard of review we apply to an order on summary judgment. *Frizzell v. DeYoung*, 163 Idaho 473, 476, 415 P.3d 341, 344 (2018).

We exercise de novo review of a trial court's grant of summary judgment, and the standard of review is the same standard the trial court used in ruling on the motion for summary judgment. *See Quemada v. Arizmendez*, 153 Idaho 609, 612, 288 P.3d 826, 829 (2012). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). The party opposing summary judgment must support the assertion that a material fact is genuinely disputed by either citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." I.R.C.P. 56(c)(1).

Finally, "[t]he awarding of attorney fees and costs is within the discretion of the trial court and subject to review for an abuse of discretion." *In re Est. of Birch*, 164 Idaho 631, 633, 434 P.3d 806, 808 (2019) (quoting *Smith v. Mitton*, 140 Idaho 893, 897, 104 P.3d 367, 371 (2004)). As we have repeatedly explained, when reviewing a trial court's alleged abuse of discretion, this Court considers whether the court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to

the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

<h3 align="center">IV.   ANALYSIS</h3>

Ryan's appeal ultimately turns on a question of statutory construction. As we have often said, "[t]he interpretation of a statute is a question of law," which this Court reviews de novo. *Elsaesser v. Black Diamond Compost, LLC*, 170 Idaho 511, 515, 513 P.3d 447, 451 (2022) (quoting *State v. Smalley*, 164 Idaho 780, 783, 435 P.3d 1100, 1103 (2019)). "The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act." *Id.* (citation omitted). We "begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning[.]" *Id.* (quoting *Harrison v. Binnion*, 147 Idaho 645, 649, 214 P.3d 631, 635 (2009)). In addition, "the statute must be construed as a whole." *Id.* (quoting *Harrison*, 147 Idaho at 649, 214 P.3d at 635). If the statute is unambiguous, we follow the law as written without applying the rules of statutory construction to determine legislative intent, such as the public policy behind the statute or its legislative history. *See id.* at 515–16, 513 P.3d at 451– 52; *J & M Cattle Co. v. Farmers Nat'l Bank*, 156 Idaho 690, 694, 330 P.3d 1048, 1052 (2014).

**A. The district court erred in dismissing Ryan's claims for a judicial determination of the estate's assets and breach of fiduciary duty.**

The district court concluded that Ryan's claims for judicial determination of the estate's assets and breach of fiduciary duty against Nancy, as personal representative, were "matters to be decided by the Probate Court." It concluded that the probate court had "exclusive jurisdiction of formal proceedings to determine how decedent's estates . . . are to be administered, expended, and distributed," faulted Ryan for not properly filing his claims in probate, and determined that "any claim asserted against [Nancy] in her personal representative capacity" was time-barred under Idaho Code section 15-3-1003 following the filing of her closing statement in the probate case on September 20, 2022. On that basis, the court dismissed Ryan's claims with prejudice and stated that any such claims may only be brought, if at all, in the probate court.

Ryan argues that this conclusion was erroneous and resulted from an incorrect reading of TEDRA. He contends that Idaho Code section 15-8-202 expressly provides that "[a] judicial proceeding under [TEDRA] may be commenced as a new action or as an action incidental to an existing judicial proceeding relating to the same . . . estate or nonprobate asset[,]" even while probate is pending, and that such a proceeding may be heard concurrently with the probate case. Alternatively, he argues that Nancy, through her statements in a probate hearing, invited any

12

alleged procedural error or should be equitably estopped from contesting his filing of the separate district court action. Nancy responds that Ryan's claims only concern her conduct as TPS's manager and that TPS was not an estate asset, so any claims related to her administration of the estate fall within the exclusive jurisdiction of the probate court.

We agree with Ryan as we explain next.

*1. TEDRA grants broad supplemental authority to resolve disputes involving estates and nonprobate assets.*

TEDRA, enacted in 2005 and codified within the Uniform Probate Code (UPC), provides "generally applicable statutory provisions for the resolution of disputes and other matters involving trusts and estates . . . ." I.C. § 15-8-101(2); *see* Act of Mar. 23, 2005, ch. 122, 2005 Idaho Sess. Laws 397. It offers both nonjudicial resolution by agreement and judicial resolution when agreement is not possible. I.C. §§ 15-8-101(2), -301. When court involvement is necessary, TEDRA's judicial procedures serve as an alternative mechanism for resolving contested matters, but they do not displace the UPC. The statute explains that TEDRA "shall not supersede, but shall supplement, any otherwise applicable provisions and procedures contained in title 15, Idaho Code, or other Idaho law." I.C. §§ 15-8-101(2), -201(2).

Section 15-8-102 further provides that courts have "full and ample power and authority under [TEDRA] to administer and settle" all matters concerning a decedent's estate and assets, including "nonprobate assets and powers of attorney . . . ." I.C. § 15-8-102(1)(a). Even when the UPC is "inapplicable, insufficient or doubtful," the court "nevertheless has full power and authority to proceed" in any manner that "seems right and proper" to ensure that the matters are "expeditiously administered and settled." I.C. § 15-8-102(2). Thus, TEDRA's design is expansive and supplemental. It allows courts to resolve, in a single judicial forum, disputes involving probate and nonprobate assets, as well as actions taken under a power of attorney.

Under TEDRA "[a]ny party may have a judicial proceeding for the declaration of rights or legal relations with respect to: . . . [a]ny matter defined in section 15-8-103, Idaho Code; . . . [or] resolution of any other case or controversy that arises under the Idaho Code and referenced judicial proceedings under [TEDRA] . . . ." I.C. § 15-8-201(1)(a), (b). TEDRA's definition of "party" includes, among others, a personal representative, heirs, beneficiaries, and "[a]ny other person who has an interest in the subject of the particular proceeding[.]" I.C. § 15-8-103(3). A "[m]atter" is broadly defined to include, among other things:

(a) The determination of any class of creditors, devisees, legatees, heirs, next of kin, or other persons interested in an estate, trust, nonprobate asset, or with respect to any other asset or property interest passing at death;

(b) The direction of a personal representative or trustee to do or to abstain from doing any act in a fiduciary capacity;

(c) The determination of any question arising in the administration of an estate or trust, or with respect to any nonprobate asset, or with respect to any other asset or property interest passing at death, that may include, without limitation, questions relating to:

> (i) The construction of wills, trusts, devolution agreements, and other writings;
>
> (ii) A change of personal representative or trustee;
>
> (iii) A change of the situs of a trust;
>
> (iv) An accounting from a personal representative or trustee; or
>
> (v) The determination of fees for a personal representative or trustee;

. . . .

(f) With respect to any nonprobate asset, or with respect to any other asset or property interest passing at death, including actual joint tenancy property, property subject to a devolution agreement, or assets subject to a pay on death or transfer on death designation:

> (i) The ascertaining of any class of creditors or others for purposes of section 15-6-107, Idaho Code;
>
> (ii) The ordering of a custodian of any of the decedent's records relating to a nonprobate asset to do or abstain from doing any particular act with respect to those records;
>
> (iii) The determination of any question arising in the administration of a nonprobate asset under section 15-6-107, Idaho Code;
>
> (iv) The determination of any questions relating to the abatement, rights of creditors, or other matter relating to the administration, settlement, or final disposition of a nonprobate asset under [the UPC]; and
>
> (v) The resolution of any matter referencing this chapter, including a determination of any questions relating to the ownership or distribution of an individual retirement account on the death of the spouse of the account holder as contemplated by section 11-604A(6), Idaho Code . . . .

I.C. § 15-8-103(1)(a)–(c), (f). TEDRA specifically contemplates disputes that extend beyond traditional probate administration—such as those involving powers of attorney and nonprobate assets—and authorizes courts to resolve them.

14

*2. Ryan's claims for a judicial determination of the estate's assets and breach of fiduciary duty fall within TEDRA's scope.*

"At its core, TEDRA provides a statutory cause of action for a declaratory judgment." *Vouk v. Chapman*, 171 Idaho 324, 336, 521 P.3d 712, 724 (2022). Under Idaho Code section 15-8-201(1), "[a]ny party may have a judicial proceeding for the declaration of rights or legal relations with respect to: . . . [a]ny matter, as defined in section 15-8-103" or the resolution of any other case or controversy referenced in TEDRA. I.C. § 15-8-201(1). Ryan, as an heir and beneficiary of Hal's estate, qualifies as a "party" under section 15-8-103(3).

Ryan's verified complaint invoked sections 15-8-102 and 15-8-202 to commence "a judicial proceeding to determine respective rights and interests in, and administer and settle all matters concerning, the [p]robate [a]ction." He asserted (1) a claim for judicial determination of the estate's assets and (2) a claim for breach of fiduciary duty against Nancy, personally and in her capacity as a personal representative, and against TPS.

In his first cause of action, Ryan alleged that Hal's 99 percent ownership interest in TPS is an estate asset requiring judicial determination. He alleged that after Hal's death, Nancy amended TPS's operating agreement following her appointment as personal representative to declare herself the sole recipient of that interest, effectively diverting property that should have passed through the estate. He also alleged that inventory disputes, missing physical assets, the value and disposition of property placed in storage, Nancy's claims for reimbursement for renovation work, the treatment of estate condominiums, the value of a timeshare at Lava Hot Springs, and the reasonableness of Nancy's compensation and TPS management fees all require judicial determination.

In his second cause of action, Ryan alleged that Nancy, as personal representative, breached her fiduciary duties to protect estate assets and to act in the interest of the heirs in four ways: (1) by claiming compensation for her personal labor based on a percentage of the alleged increase in the value of estate property; (2) by asserting that Hal's 99 percent interest in TPS passed to her; (3) by selling TPS's storage units and treating the proceeds as her own; and (4) by allowing a timeshare unit in Salt Lake City to be foreclosed. All these actions caused financial loss to the estate and to Ryan. TEDRA provides a judicial mechanism for resolving exactly this type of integrated dispute involving estate administration, fiduciary conduct, and disputed property interests, whether characterized as probate or nonprobate.

These allegations involve precisely the kinds of "matters" TEDRA embraces, including the identification of estate and nonprobate assets, questions arising in the administration of an estate, directions to a fiduciary, and disputes over the ownership and disposition of property interest passing at death. *See* I.C. § 15-8-103(1)(a)–(c), (f). They also implicate Nancy's roles as power of attorney for Hal, personal representative of Hal's estate, and manager of TPS, as well as the legal basis for her authority to treat TPS's interest and proceeds as her own rather than as estate assets.

Further, Ryan only filed his TEDRA complaint after Nancy repeatedly refused to disclose records that he requested in the probate case concerning TPS. TEDRA expressly authorizes a court to order "a custodian of any of the decedent's records relating to a nonprobate asset to do or abstain from doing any particular act with respect to those records[.]" I.C. § 15-8-103(1)(f)(ii). A personal representative owes fiduciary duties to account for estate property and to provide interested persons with information concerning the identification and administration of estate assets. *See* I.C. § 15-3-703(a) (a personal representative "shall observe the standards of care applicable to trustees"); I.C. § 15-7-302 ("if the trustee has special skills or is named trustee on the basis of representations of special skills or expertise, he is under a duty to use those skills"). Early in the probate case, Ryan requested access to TPS's operating agreement, its amendments, and related exhibits, the company's financial statements and tax returns, as well as Hal's personal tax returns from 2008 through 2019. Operating agreements and amendments set out TPS's recorded membership structure, including voting rights and ownership percentages. Financial statements reflected how TPS allocated profits, losses, and capital accounts. Tax returns, including K-1 forms, reported TPS's ownership and income to taxing authorities. Reviewed together, these records were relevant to determining whether TPS recognized Hal's membership or economic interest before his death, and whether any claimed changes to that interest were consistent with TPS's accounting and tax reporting.

Ryan requested these records to determine whether Hal retained a membership or economic interest in TPS at the time of his death and, if so, to what extent. If he did, that interest would be an estate asset subject to administration and distribution under Hal's will. Nancy was the sole custodian of those records. However, Nancy, in both capacities, refused to disclose the requested documents. In probate, she asserted they were irrelevant because TPS was a third-party entity, and any related events predated Hal's death. In the TEDRA case, acting as TPS's manager, she again refused disclosure on the ground that Ryan lacked inspection rights under the Idaho Uniform

16

Limited Liability Company Act. Both positions presupposed that Hal's interest in TPS had been transferred or extinguished before death—the central point of dispute between the siblings.

Thus, TEDRA's statutory framework was essential to Ryan because TEDRA provided a judicial mechanism for determining the extent of Hal's retained interest in TPS at death *and* for compelling disclosure of the records necessary to make that determination.

### 3. TEDRA permits a separate judicial action; it does not confine these disputes to the probate court.

Nancy argues that any claims relating to her conduct as personal representative must be brought exclusively in the probate action. TEDRA says otherwise. Section 15-8-202(2) provides that "[a] judicial proceeding under [TEDRA] may be commenced as a new action or as an action incidental to an existing judicial proceeding relating to the same trust or estate or nonprobate asset." I.C. § 15-8-202(2). Once commenced, the action "may be consolidated with an existing proceeding or converted to a separate action" upon motion or on the court's own initiative. I.C. § 15-8-202(3). The Idaho Rules of Civil Procedure apply to such proceedings. I.C. §§ 15-8-202(4), -203. Under Rule 3(b), "[a] civil action must be commenced by filing a complaint, petition or application with the court." I.R.C.P. 3(b). Ryan followed that procedure here.

More broadly, district courts in Idaho have original jurisdiction "in all cases, both at law and in equity[.]" Idaho Const. art. V, § 20; *see* I.C. § 1-705(1). Magistrate judges are assigned by statute to hear probate matters, including "the probate of wills and administration of estates of decedents[.]" I.C. § 1-2208(2). In that role, the probate court has "exclusive jurisdiction of formal proceedings to determine how decedents' estates . . . are to be administered, expended and distributed." I.C. § 15-3-105. A magistrate court may also hear "any other controversy" arising under the probate code. I.C. § 15-3-106; *see Miller v. Est. of Prater*, 141 Idaho 208, 213–14, 108 P.3d 355, 360–61 (2005).

Nothing in these provisions, however, strips the district court of authority to hear a TEDRA action that raises claims falling within sections 15-8-103 and 15-8-201. TEDRA expressly supplements, rather than supersedes, existing probate procedures outlined in the UPC, and it expressly authorizes judicial proceedings initiated by complaint. I.C. §§ 15-8-101(2), -201(2), -202(4). A TEDRA action may be brought separately from a pending probate case. I.C § 15-8-202(2). Those actions may then be consolidated or not, "upon the motion of a party for good cause shown, or by the court on its own motion." I.C § 15-8-202(3). The district court's conclusion that Ryan's claims "must" be decided only in probate is incorrect as a matter of law.

17

Because Ryan's claims for judicial determination of the estate and breach of fiduciary duty fall within TEDRA's definition of "matters" and may be raised in a separate civil action, the district court erred in dismissing them as belonging solely to the probate court. In light of this conclusion, we do not address Ryan's alternative arguments based on invited error or equitable estoppel.

For the foregoing reasons, we vacate the district court's judgment entered on May 30, 2024. We reverse, in part, the district court's order[4] entered on February 23, 2024, captioned as "Memorandum Decision on Plaintiff's Motion to Reconsider, Plaintiff's Motion for Partial Summary Judgment, Defendant's Motion to Dismiss, and Defendant's Motion for Summary Judgment." This Court reverses the order only in part, limited to the district court's dismissal of Ryan's causes of action[5] for judicial determination of the estate and breach of fiduciary duty alleged against Nancy, as personal representative.

## B. The magistrate court erred in dismissing TPS and Nancy as parties in the TEDRA case.

The next issue is whether TPS and Nancy are necessary parties to the TEDRA action. The magistrate court, presiding over the probate and TEDRA case and treating them as one consolidated case, entered a judgment dismissing, with prejudice, all four causes of action Ryan alleged in the TEDRA case against TPS and Nancy, individually. The record does not clearly indicate the court's reasons for dismissing the judicial determination and breach of fiduciary duty claims against TPS and Nancy. We infer from Nancy's argument and the hearing transcript that Nancy and TPS were dismissed based on the magistrate court's determination that Ryan's cause of action for breach of fiduciary duty was only alleged against Nancy as personal representative and that Nancy, individually, and TPS were not necessary parties in Ryan's cause of action for judicial determination of the estate.

Ryan's amended complaint alleges that Hal formed TPS with an initial real-property contribution valued at $737,605 and retained a 99 percent ownership interest during his lifetime. Nancy held a one percent economic interest. Although Hal resigned as manager before his death, he did not transfer his ownership interest. After his death, Nancy executed amendments to the operating agreement that granted her 99 percent ownership, some of which had retroactive effect.

---

[4] The district court's order (1) denied Ryan's motion to reconsider, (2) denied Ryan's motion for partial summary judgment, (3) granted Nancy's motion to dismiss, and (4) granted Nancy's motion for summary judgment.

[5] Ryan does not appeal the district court's dismissal of his cause of action for a constructive trust, and we express no opinion regarding that issue.

She then sold TPS's storage-unit property in May 2022 and treated the proceeds as her own rather than as an estate asset. These allegations frame the dispute: whether Hal's membership interest in TPS, or proceeds from the sale of TPS's assets, are estate assets to be distributed equally under Hal's will, or whether Nancy's individual conduct diverted or altered that interest.

    1. *Nancy is a necessary party in the TEDRA case.*

A court's determination of whether a party is "necessary" is governed by Rule 19 of the Idaho Rules of Civil Procedure, applicable to TEDRA under Idaho Code section 15-8-203. Under that rule, a party is required to be joined if the party is subject to service and:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

I.R.C.P. 19(a)(1).

Nancy ultimately claimed to hold a 100 percent membership interest in TPS under the operating agreement amendments. As personal representative, she submitted an affidavit in the probate case, which claimed:

> Hal Monson specifically granted me, as Personal Representative, "absolute discretion in the selection of property to be allocated in satisfaction of any gift ...". *See Will of Hal Monson at p.5-6 Article 8 § H.* Therefore, I am exercising such "absolute discretion" to allocate to myself the remaining non-voting/non-management financial interest of the Company in which I am the only member and manager. The most that Ryan Monson could have otherwise received would have been a one half of one percent non-voting interest in TPS.

Nancy further asserts that her capital and in-kind contributions entitle her to retain the proceeds from the 2022 TPS sale. Disposing of the TEDRA action without including Nancy as a party would, as a practical matter, impair or impede her ability to protect her asserted interest. Adjudication of the TEDRA action will require the district court to determine whether Hal's interest in TPS was an estate asset and whether Nancy's retroactive amendments were effective. Any determination that Hal's interest in TPS was an estate asset would directly affect Nancy's asserted personal interest in TPS. If Nancy participated only as a personal representative, the court could not resolve the competing claims between the estate and Nancy concerning Nancy's and

Hal's membership interest in TPS. Without Nancy, complete relief is impossible. *See* I.R.C.P. 19(a)(1)(A). Moreover, Nancy attests that the retroactive amendment "was not prepared and signed by [her] as and [sic] estate representative. It was prepared and signed by [her] in [the] role as manager of TPS, LLC." Nancy acknowledges the distinction between her roles as personal representative and as TPS's manager. Her absence individually may create the risk of both impairment and inconsistent obligations. *See* I.R.C.P. 19(a)(1)(B).

Nancy's argument that TPS is a third-party entity and not an estate asset does not alter the analysis. Determining whether Hal's *interest* in TPS qualifies as an estate asset falls squarely within TEDRA's definition of a "matter." I.C. § 15-8-103(1)(a). Resolving that question without her participation would unavoidably adjudicate her claimed interest in TPS. Therefore, we hold that because Nancy is a necessary party in the TEDRA case under Idaho Rule of Civil Procedure 19, the magistrate court erred in dismissing her.

### 2. *TPS is a nominal party in the TEDRA case.*

Nancy conceded at oral argument that TPS was a nominal party in the siblings' dispute, although the parties initially disputed the point in their opening briefs. "[A] nominal party refers to 'one, who, having some interest in or title to the subject matter of the lawsuit, will not be affected by the judgment.'" *See Jackson v. Crow*, 164 Idaho 806, 817, 436 P.3d 627, 638 (2019) (quoting Bryan A. Garner, *Garner's Dictionary of Legal Usage* 607 (3d ed. 2011)). Since TPS's nominal party status is undisputed, the remaining question is whether TPS's participation is appropriate.

Rule 20 of the Idaho Rules of Civil Procedure states that persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." I.R.C.P. 20(a)(2). In addition, a defendant need not be interested in defending against all the relief demanded. I.R.C.P. 20(a)(3). Those requirements are met here. The competing claims concerning TPS's ownership, management, and asset disposition arise from the same underlying events and are best resolved together.

Permissive joinder under Rule 20 is distinct from necessary-party status under Rule 19. Although TPS is not a necessary party, its joinder is proper. We therefore hold that the magistrate court erred in dismissing TPS from the TEDRA case.

For the foregoing reasons, we vacate the district court's judgment entered on June 9, 2022, which dismissed Nancy and TPS from the case. Accordingly, we reverse the magistrate court's operative order that formed the basis for the June 9 judgment. The court entered that order[6] on May 31, 2022. Our reversal is limited to the magistrate court's decision to dismiss Ryan's causes of action[7] alleged against Nancy and TPS for judicial determination of the estate and breach of fiduciary duty.

## C. We do not address Nancy's cross-appeal.

On cross-appeal, Nancy contends that the court abused its discretion by denying attorney fees under Idaho Code sections 15-8-208 and 12-121, personally and in her capacity as personal representative. Based on our discussion above, we do not reach Nancy's cross-appeal because our decision vacates the magistrate court's and district court's judgments. Accordingly, the district court's judgment awarding costs to Nancy as prevailing party, in both capacities, is vacated. After entry of a new final judgment, the parties may renew their motions for attorney fees.

## D. Ryan is entitled to reasonable attorney fees and costs on appeal from Nancy's personal funds.

Each party seeks attorney fees and costs on appeal under TEDRA. Because Ryan is the prevailing party, Nancy, whether in her individual or personal representative capacity, is not entitled to fees or costs. Ryan contends that attorney fees against Nancy are warranted based on her repeated procedural challenges that increased the cost of litigation, despite her own participation in how the case was initiated.

Under TEDRA, both the trial court and this Court may make an equitable award of costs and reasonable attorney fees. *Vouk v. Chapman*, 171 Idaho 324, 336, 521 P.3d 712, 724 (2022) (citing I.C. § 15-8-208). Idaho Code section 15-8-208(1) permits the court to order fees and costs to be awarded to a party, from any party to the proceedings, the assets of an estate or trust, or from a nonprobate asset that is the subject of the proceeding. The decision is discretionary and depends

---

[6] The magistrate court captioned the order as "Orders." That order (1) denied Ryan's motion to void the transfer; (2) granted, in part, Ryan's motion for partial summary judgment; (3) denied Ryan's motion to remove the personal representative and motion for reconsideration; (4) granted Nancy's motion, as personal representative, for partial dismissal or partial summary judgment; (5) granted Nancy and TPS's motion for partial summary judgment; (6) granted Nancy and TPS's third motion to dismiss; (7) and dismissed Ryan's cause of action for fraud alleged against Nancy, in both capacities, and TPS.

[7] Ryan does not appeal the dismissal of his causes of action for fraud or appointment of a receiver, and we express no opinion on these issues.

21

primarily on the form of relief pursued and granted. *In re Est. of Smith*, 164 Idaho 457, 482, 432 P.3d 6, 31 (2018); *Vouk*, 171 Idaho at 336, 521 P.3d at 724.

Ryan invoked TEDRA in both his original and amended complaints, alleging that, under Idaho Code sections 15-8-102 and 15-8-202, this action is a judicial proceeding to determine rights and interest in, and to settle all matters concerning, Hal's estate. He has now prevailed on appeal. In light of the relief sought and obtained, we award Ryan his costs and reasonable attorney fees on appeal. Exercising our discretion under section 15-8-208(1)(a), we order that those fees and costs be paid by Nancy personally, and not from estate assets.

## V.   CONCLUSION

Based on the foregoing, we vacate the magistrate court's judgment that dismissed Nancy and TPS from the case, and the district court's judgment that dismissed Ryan's claims for judicial determination of the estate and breach of fiduciary duty alleged against Nancy, as personal representative. We reverse, in part, the magistrate court's operative order entered on May 31, 2022, captioned as "Orders." We also reverse, in part, the district court's order entered on February 23, 2024, captioned as "Memorandum Decision on Plaintiff's Motion to Reconsider, Plaintiff's Motion for Partial Summary Judgment, Defendant's Motion to Dismiss, and Defendant's Motion for Summary Judgment." Finally, we vacate the district court's judgment awarding costs to Nancy as prevailing party, in both capacities, and remand the case for further proceedings consistent with this opinion.

Ryan is awarded costs and reasonable attorney fees on appeal against Nancy.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.

22